SCHELL *v.* ELKINS *et al.*

*(Supreme Court, General Term, Second Department.  May 12, 1890.)*

MORTGAGES—FORECLOSURE SALE—REDUCTION OF TAXES.

Where completion of title under a foreclosure sale is postponed, and in the mean time taxes on the property are reduced under the arrearages act, (Laws N. Y. 1883, c. 114,) the purchaser is entitled to allowance for the tax as it stood when his bid was made.

Appeal from special term, Kings county.

Foreclosure proceedings instituted by Edward Schell, trustee of Mary Payson Cargill, against George B. Elkins and others.  An order was entered denying plaintiff's motion to be released from his purchase at the foreclosure sale, and setting aside the order confirming the sale, and directing the sheriff to make a new report allowing plaintiff less on account of taxes and interest, and plaintiff appeals.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Edward H. Schell,* (*James O. Hoyt* and *Frederick A. Ward,* of counsel,) for appellant.  *J. Ralph Burnett, J. Hunt Betts,* and *Sherman Evarts,* (*William D. Veeder,* of counsel,) for respondents.

BARNARD, P. J.  The plaintiff, in 1875, obtained a decree for the foreclosure and sale of certain mortgaged premises in Brooklyn.  No sale was made under the decree until April, 1881, when the plaintiff bought in the property for $15,000.  The taxes then upon the property were $4,505.53, which were, by condition of sale, to be deducted.  The title under this sale was left unperfected until 1889, when the sale was adjudged a good sale, and the plaintiff was required to complete the purchase and take title under it.  The taxes on the property in 1889 had been reduced, under chapter 114 of Laws of 1883, to the sum of $8,026.  The sheriff, on giving the deed, allowed the tax as it stood when the bid was made, and the order appealed from corrects this by allowing only the reduced tax, under the arrearages act above mentioned.

I think the sheriff's report was correct.  The order appealed from is based upon the statement in it that the sale should have been closed on the 4th of May, 1881.  If that had been done, an allowance of the tax as it then stood would have been a matter of course.  A subsequent reduction under a law two years later would not have inured to the benefit of the mortgagor or his representatives, but to the exoneration of the land which the plaintiff owned.  The arrearage law was designed to reduce a tax on the land to a sum which it justly ought to pay at the time of the passage of the act.  The tax was not necessarily bad, but it had become so large that it was deemed better to reduce it, and get payment, than to sell the land for the larger amount, and lose it, as the act states that the tax has become greater than the assessed value of the land in some states.  The accounting should be as of 4th May, 1881, allowing the tax as it then stood.  The debt was then $11,437.31; the costs and interest on the amount, $440.23; the sheriff's fees, $211.50; the tax is $4,505.53.  This would leave a debt on May 4, 1881, of $1,594.37.  The order should be modified so as to conform to this result.